UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN WILLIS,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW TAYLOR, et al.,<br><br>    Defendants. | Case No. 22-cv-03427-HSG<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES; ADDRESSING PENDING MOTIONS; REQUIRING RESPONSE FROM PLAINTIFF**<br><br>Re: Dkt. Nos. 17, 20, 23, 26 |

Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against San Quentin State Prison ("SQSP") correctional officer Taylor, alleging that on March 14, 2019, defendant Taylor used excessive force on him, in violation of the Eighth Amendment. Dkt. Nos. 1, 11. Now pending before the Court is defendant Taylor's motion for summary judgment for failure to exhaust administrative remedies. Dkt. No. 17. Plaintiff has filed an opposition, Dkt. No. 24, and defendant Taylor has filed a reply, Dkt. No. 25. After the motion was fully briefed, Plaintiff filed a motion for leave to file a surreply. Dkt. No. 26. For the reasons set forth below, the Court DENIES Plaintiff's request for leave to file a surreply, Dkt. No. 26, and DENIES defendant Taylor's summary judgment motion. This order also addresses Plaintiff's motion for summary judgment, Dkt. No. 20, and Defendant's motion to stay the deadline for responding to Plaintiff's summary judgment motion and to stay merits-based discovery, Dkt. No. 23.

**DISCUSSION**

**I.   Background**

    **A.   Complaint**

In relevant part, the complaint alleges that on March 14, 2019, as Plaintiff was going down

1   the bayside stair in West Block to meet his correctional counselor, defendant Taylor grabbed
2   Plaintiff's left arm, ripped Plaintiff's hand away from his body, and violently slammed Plaintiff
3   into the stair rail, causing injury to Plaintiff's lower back.  Plaintiff's lower back pain is ongoing to
4   this day.  *See* Dkt. No. 1 at 3, 6.  The Court found that the complaint stated a cognizable Eighth
5   Amendment excessive force claim against defendant Taylor.  Dkt. No. 11.

**B.     CDCR Administrative Grievance Process**

During the relevant time period, the CDCR provided inmates with the administrative grievance process set forth in the version of 15 Cal. Code §§ 3084-3086 in effect at that time.[1]  The CDCR provided its inmates "an administrative mechanism for review of departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect upon the welfare of inmates . . . ."  15 Cal. Code Regs. § 3084.1(a) (2019).  The grievance process required a prisoner to use a CDCR Form 602 "to describe the specific issue under appeal and the relief requested" by stating all facts known and available regarding the issue, and by listing all staff member(s) involved and describing their involvement in the issue.  15 Cal. Code Regs. § 3084.2(a) (2019).  A grievance was reviewed at three different levels: (1) a first formal level filed with one of the institution's appeal coordinators, (2) a second formal level filed with the institution head or designee, and (3) a third formal level filed with the CDCR's Office of Appeals ("OOA").  15 Cal. Code Regs. § 3084.7 (2019).  Pursuing a grievance through the third and final level satisfied the exhaustion requirement set forth in 42 U.S.C. § 1997e(a).  15 Cal. Code Regs. § 3084.1(b) (2019).

Appeals to the third level of review were reviewed by the Office of Appeals ("OOA") and either screened in or screened out.  A grievance was screened in (answered substantively) if it complied with the governing regulations.  A grievance was screened out (not answered

---

[1] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020.  On March 25, 2020, and effective June 1, 2020, 15 Cal. Code Regs. §§ 3084–3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487.  Because the relevant events took place in 2019, the current administrative grievance process does not apply to Plaintiff's claim.  All the citations in this order to the California regulations are to the regulations in place during the relevant period in this case, rather than to the current regulations.

substantively) if it did not comply with the governing regulations. If a grievance was screened out, the grievance was returned to the inmate as cancelled or rejected. The inmate was informed of the reason for the cancellation or rejection, and informed as to how the deficiency couldd be cured, if the regulations provide for a cure. Dkt. No. 17-3 ("Moseley Decl."), ¶ 4; *see also* 15 Cal. Code Regs. § 3084.6 (2019) (listing possible reasons for cancellation or rejection, and whether rejection or cancellation could be cured).

An inmate filing an allegation of misconduct by a correctional officer was required to read and sign an advisory that specified his rights with respect to the investigation of the misconduct allegations. Cal. Penal Code § 148.6 (2019); 15 Cal. Code Regs. § 3084.9(i) (2019). With respect to the CDCR's administrative grievance process, the advisory was the CDCR Form 1858, Rights and Responsibility Statement. 15 Cal. Code Regs. § 3084.9(i) (2019).

### C. Grievance No. SQ-A-19-01083

Grievance No. SQ-A-19-01083 is the only grievance to grieve the March 14, 2019 alleged use of excessive force by defendant Taylor.[2] Dkt. No. 1 at 1-2; Dkt. No. 17-4 at 7-12. Grievance No. SQ-A-19-01083 was submitted on April 4, 2019 and bypassed at the first level. Dkt. No. 17-4 at 7. Grievance No. SQ-A-19-01083 was partially granted at the second level in that the matter was referred for an confidential inquiry.

The second level decision was prepared on April 19, 2019; signed by the hiring authority on May 6, 2019; and issued to Plaintiff on May 7, 2019. Dkt. No. 1 at 2; Dkt. No. 17-4 at 11. The decision informed Plaintiff that this decision did not exhaust his administrative remedies as follows:

- Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.

- If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's Level of

---

[2] Prison records indicate that between March 14, 2019, when the alleged incident took place, and June 1, 2020, when Plaintiff was transferred away from SQSP, Plaintiff filed four grievances that were exhausted (i.e., appealed to the third and final level). Dkt. Nos. 17-2. Of these four grievances, only Grievance No. SQ-A-19-01083 grieved defendant Taylor's alleged use of excessive force. *Id.* None of the other three grievances complained about defendant Taylor or complained about the rejection of Grievance No. SQ-A-19-01083 at the third level of review. *Id.*

> Review. Once a decision has been rendered at the Third Level, your administrative remedies will be considered exhausted.

Dkt. No. 24 at 12.

On May 22, 2019, Plaintiff appealed the second level decision, alleging that the CDCR had failed to protect him from abuse by defendant Taylor and had failed to determine if defendant Taylor had received adequate training. In the appeal, Plaintiff stated that he had not received an explanation as to why defendant Taylor assaulted him. Dkt. No. 17-3 at 8, 10.

On July 10, 2019, Grievance No. SQ-A-19-01083 was rejected pursuant to 15 Cal. Code Regs. § 3084.6(b)(7) because it was missing the following necessary supporting documents: CDCR Form 1848, Rights and Responsibilities Statement. Dkt. No. 17-4 at 6. The rejection letter informed Plaintiff that a rejected grievance could not be appealed but that Plaintiff "should take the corrective action necessary and resubmit the [grievance] within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b)." Dkt. No. 17-4 at 6.

Plaintiff states that he re-submitted the grievance to the third level on September 3, 2019, but did not receive any further response from correctional officials. Dkt. No. 1 at 2. Plaintiff has provided the Court with a CDCR Form 1858 dated August 5, 2019. Dkt. No. 24 at 14. Defendant reports that the CDCR has no record of Plaintiff resubmitting his appeal of the second level decision and no record of the Office of Appeals receiving the CDCR Form 1858 dated August 5, 2019. No third level decision was issued for Grievance No. SQ-A-19-01083.

On December 23, 2019, Plaintiff sent a letter to the OOA asking about the status of Grievance No. SQ-A-19-01083, stating that he was still waiting for a response to Grievance No. SQ-A-19-01083:

> I I/M Willis, AN6349; has been waiting for your response on my 602 complaint filed 4-4-2019 Log No. SQ-A-19-01083; Your office has not respond to this matter as of yet is there a Problem? As of this date 8-5-19 Your office still has not responded, this matter is of serious review of correctional officer M. Taylor. Awaiting your response, the additional material is to inform Sacramento of the problems inmates are facing from correctional officer M. Taylor.
> 12-23-19 Calvin Willis

Dkt, No. 17-4 at 17. The OOA responded to Plaintiff with a letter dated January 3, 2020, by providing Plaintiff with a summary of his recent grievance history and the status of any grievances still under review. Dkt. No. 17-4 at 14-16. The grievance summary listed only Grievance No.

4

1  SQ-A-19-01083 and stated that this grievance had been screened out on July 10, 2019 because
2  supporting documents had not been attached. Dkt. No. 17-4 at 16. Plaintiff did not take any
3  action in response to this letter.

**DISCUSSION**

## I. Plaintiff's Request for Leave to File a Surreply

After the motion was fully briefed, Plaintiff filed a pleading titled "motion to respond to defendant's motion to dismiss plaintiff summary judgment." Dkt. No. 26. The Court construes this as a request for leave to file a sur-reply in opposition to Defendant's summary judgment motion because (1) Defendant has not moved to dismiss Plaintiff's summary judgment motion and has only requested to stay the deadline to oppose the summary judgment motion, and (2) the pleading discusses whether Plaintiff has exhausted his administrative remedies for this claim, which is the subject of Defendant's summary judgment motion, but not of Plaintiff's summary judgment motion. N.D. Cal. L.R. 7-3(d) provides that once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval, except if new evidence has been submitted in the reply or a relevant judicial opinion was published after the date the opposition or reply was filed by filing. N.D. Cal. L.R. 7-3(d). Defendants' reply brief in in support of their summary judgment motion did not submit new evidence, and Plaintiff's proposed sur-reply did not reference a newly published relevant judicial opinion. *See* Dkt. Nos. 25, 26. Accordingly, the Court DENIES Plaintiff's request for leave to file a surreply. Dkt. No. 26.

## II. Defendant's Summary Judgment Motion for Failure to Exhaust Administrative Remedies

### A. Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

United States District Court
Northern District of California

party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020). If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). However, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

**B.     Exhaustion**

The PLRA sets forth the following exhaustion requirement: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory, *Jones v. Bock*, 549 U.S. 199, 211 (2007), and requires "proper exhaustion" of available administrative remedies, *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion

6

1    requires using all steps of an administrative process and "demands compliance with an agency's
2    deadlines and other critical procedural rules because no adjudicative system can function
3    effectively without imposing some orderly structure on the course of its proceedings." *Woodford*,
4    548 at 90–91. Compliance with prison grievance procedures is all that is required by the PLRA to
5    "properly exhaust." *Jones*, 549 U.S. at 217–18.

6        "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of
7    administrative remedies: An inmate, that is, must exhaust available remedies, but need not
8    exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (alteration in original);
9    *see Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (per curiam); *see also Brown v.*
10   *Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust available remedies persists
11   as long as some remedy remains available. Once that is no longer the case, then there are no
12   remedies . . . available, and the prisoner need not further pursue the grievance.") (citation and
13   internal quotation marks omitted).

14       Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead
15   and prove. *Jones*, 549 U.S. at 204, 216. The defendant's burden is to prove that there was an
16   available administrative remedy and that the prisoner did not exhaust that available administrative
17   remedy. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014). Once the defendant has carried that
18   burden, the burden shifts to the prisoner to come forward with evidence showing that there is
19   something in his particular case that made the existing and generally available administrative
20   remedies effectively unavailable to him. *Albino*, 747 F.3d at 1172. That is, the burden shifts to
21   the prisoner to come forward with evidence showing that there is something in his particular case
22   that made the existing and generally available administrative remedies effectively unavailable to
23   him. *Id.* But as required by *Jones*, the ultimate burden of proof remains with the defendant. *Id.*
24   If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to
25   exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material
26   facts are disputed, summary judgment should be denied and the district judge rather than a jury
27   should determine the facts in a preliminary proceeding. *Id.*
28   //

**C.    Analysis**

Defendant argues that he is entitled to summary judgment because Plaintiff failed to exhaust administrative remedies by not submitting the required documentation after the third level rejection of his appeal of the second level decision for Grievance No. SQ-A-19-01083.  *See generally* Dkt. No. 17.  Plaintiff argues that the CDCR Form 1858 is not required when lodging a staff misconduct complaint, as set forth in 15 Cal. Code Regs. § 3391; and that once Grievance No. SQ-A-19-01083 was processed as a staff complaint, he was not required to take any further steps to exhaust remedies.  *See generally* Dkt. No. 24.

The PLRA's exhaustion requirement requires Plaintiff to have complied with the CDCR regulations governing the CDCR administrative grievance process.  Contrary to Plaintiff's assertion, the CDCR Form 1858 is required by state regulations when a complainant alleges staff misconduct.  Cal. Penal Code § 148.6 (2019); 15 Cal. Code Regs. § 3084.9(i) (2019).  Accordingly, Plaintiff was required to submit the CDCR Form 1858 as part of the CDCR administrative remedy process and the rejection of his grievance for failure to comply with the CDCR Form 1858 requirement did not render the grievance process unavailable to him.

However, viewing the record in the light most favorable to Plaintiff, there is a triable issue of fact as to whether administrative remedies were effectively unavailable to Plaintiff for Grievance No. SQ-A-19-01083.  Plaintiff alleges that he re-submitted the grievance to the third level on September 3, 2019, but did not receive any further response from correctional officials.  Dkt. No. 1 at 2.  This allegation is supported by (1) a copy of a CDCR Form 1858 signed on August 5, 2019, and submitted by Plaintiff as part of his opposition to the summary judgment motion, Dkt. No. 24 at 14; and (2) a note submitted by Plaintiff to the Office of Appeals dated December 23, 2019, in which he requests an update as to the status of Grievance No. SQ-A-19-01083 and references an August 5, 2019 date, Dkt. No. 17-4 at 17, which is the same date on the CDCR Form 1858.  Making all justifiable inferences in Plaintiff's favor, it is possible that Plaintiff copied the CDCR Form 1858 before he submitted it to prison authorities, then handed the CDCR Form 1858 and his appeal of the second level decision to prison authorities sometime between August 5, 2019 and September 3, 2019, and that the CDCR Form 1858 and appeal did not make it

8

to the Office of Appeals through no fault of Plaintiff. Plaintiff would not know that the OOA had not received his Form 1858 and appeal until he received the January 3, 2020 response to his December 23, 2019 request for a status update, at which time he was outside the timeframe during which he could take corrective action. These justifiable inferences create a genuine dispute as to whether administrative remedies were effectively unavailable to Plaintiff for Grievance No. SQ-A-19-01083.

Defendant argues that the CDCR Form 1858 does not create a genuine dispute as to whether Plaintiff attempted to exhaust his administrative remedies because the document is not authenticated; the document was backdated to August 5, 2019; and there is no evidence that the Office of Appeals received this document in that there is no receiving staff name, signature or date, and no received-date stamp. Dkt. No. 25 at 3-4. Defendant further argues that Exs. 1, 3, and 4 to the Moseley Declaration in support of his summary judgment motion are "uncontroverted evidence" that Plaintiff failed to challenge the third-level rejection by resubmitting his grievance with the necessary supporting document. Dkt. No. 25 at 4. Exhibit 1 is a printout of the Inmate / Parolee Appeals Tracking System Level III showing that Grievance No. SQ-A-19-01083 was screened out on July 10, 2019 for failure to attach the required supporting documents. Dkt. No. 17-4 at 1-2. Exhibit 3 is a copy of the July 10, 2019 screening letter and the grievance itself. Dkt. No. 17-4 at 5-12. Exhibit 4 is a copy of the January 3, 2020 response to Plaintiff's December 23, 2019 note which provided Plaintiff with a summary of his recent grievance history and status of the grievances under review, and a copy of Plaintiff's December 23, 2019 note. The attached summary is a copy of Exhibit 1. Dkt. No. 17-4 at 13-18. At best, Defendant's allegations and exhibits establish that the Office of Appeals never received the CDCR Form 1858 or an appeal from Plaintiff. They do not conclusively establish that Plaintiff failed to submit the CDCR Form 1858 and the appeal to a prison official: the documents are equally consistent with an inference that Plaintiff did so, but the prison official, for whatever reason, did not convey the CDCR Form 1858 and the appeal to OOA. The CDCR Form 1858 presumably could be authenticated by Plaintiff at an evidentiary hearing, and whether the form is backdated is a disputed issue of material fact that the Court cannot resolve at the summary judgment stage. Viewed in the light

9

1  most favorable to Plaintiff, the record shows a triable issue of material fact as to whether
2  Petitioner properly resubmitted Grievance No. SQ-A-19-01083 with the required forms; whether
3  prison officials failed to ensure that the resubmitted grievance was submitted to the Office of
4  Appeals; and whether administrative remedies were therefore effectively unavailable to Plaintiff.
5  Accordingly, the Court DENIES Defendant's motion for summary judgment for failure to exhaust
6  administrative remedies.

### III. Plaintiff's Summary Judgment Motion, Dkt. No. 20, and Defendant's Motion to Stay Deadlines and Merits-Based Discovery, Dkt. No. 23

Plaintiff has filed a pleading titled "Motion: of Summary Judgment." Dkt. No. 20. The pleading is a two-page document repeating the factual allegations in the complaint and stating conclusorily that defendant Taylor used excessive force and that Plaintiff has "proven summary judgment beyond reasonable doubt" because defendant Taylor "should have known better to cause this harm against [Plaintiff]." Dkt. No. 20 at 2-3. Defendant has filed a motion to stay the deadline for opposing Plaintiff's summary judgment motion and merits-based discovery, arguing that his motion for summary judgment for failure to exhaust administrative remedies may resolve this action. Dkt. No. 23. In Dkt. No. 24, which the Court has construed as an opposition to Defendant's summary judgment motion because it addresses the exhaustion issue, Plaintiff addresses the motion to stay. Plaintiff titled Dkt. No. 24 "Motion to Respond to Defendant's Meritis (sic) / Base Discovery / To Plaintiff Summary Judgment to Exhaustion Administrative Remedies – Memorandum of Points and Authorities." Dkt. No. 24 at 1. In Dkt. No. 24, Plaintiff states that the Court "should grant summary judgment against defendant M. Taylor for machination games with the Court," and that the Court "missunderstood (sic) the Summary Judgment and the Court should have seen in Plaintiff's request for a lawyer he also argued defendant's Exhaust claim then." Dkt. No. 24 at 1-2.

Given Plaintiff's representation in Dkt. No. 24 and the brevity of Dkt. No. 20, it is unclear if Plaintiff intended Dkt. No. 20 to serve as a summary judgment motion. Accordingly, the Court DENIES Plaintiff's motion for summary judgment, Dkt. No. 20, without prejudice to Plaintiff re-filing a motion for summary judgment if and when the Court sets a merits-based briefing schedule.

10

1  Dkt. No. 20.  In light of the Court's denial of Plaintiff's motion for summary judgment and the

2  Court's denial of Defendant's motion for summary judgment for failure to exhaust administrative

3  remedies, the Court DENIES as moot Defendant's request to stay the deadline for opposing

4  Plaintiff's summary judgment motion (Dkt. No. 20) and to stay merits-based discovery.  Dkt. No.

5  23.  Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further

6  court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the

7  parties may conduct discovery.

## CONCLUSION

For the foregoing reasons, the Court orders as follows.

1. The Court DENIES Plaintiff's request for leave to file a sur-reply.  Dkt. No. 26.

2. The Court DENIES Plaintiff's motion for summary judgment.  Dkt. No. 20.  This denial is without prejudice to Plaintiff re-filing a motion for summary judgment if and when the Court sets a merits-based briefing schedule.

3. The Court DENIES as moot Defendant's request to stay the deadline for opposing Plaintiff's summary judgment motion (Dkt. No. 20) and to stay merits-based discovery.  Dkt. No. 23.  Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

4. The Court DENIES Defendant's motion for summary judgment for failure to exhaust administrative remedies.  Dkt. No. 17.

5. The Ninth Circuit has directed that when a motion for summary judgment for failure to exhaust is denied, disputed factual questions relevant to exhaustion should be decided by the judge.  *Albino*, 747 F.3d at 1170-71 (permitting limited preliminary proceeding to "decide disputed questions of fact").  Accordingly, within **fourteen (14) days** of the date of this order, Defendant shall inform the Court whether he elects to (1) proceed with a limited evidentiary hearing regarding whether Plaintiff submitted the CDCR Form 1858 on or about August 5, 2019, and whether administrative remedies were rendered unavailable to Plaintiff with respect to Grievance No. SQ-A-19-01083, or (2) wishes to waive the exhaustion defense and proceed to the

merits of this action.

Should Defendant elect to proceed with a limited evidentiary hearing, the Court will appoint counsel for Plaintiff for the limited purpose of representation during the evidentiary hearing. The evidentiary hearing will be limited to determining whether Plaintiff re-submitted his appeal of the second level decision in or around August or September of 2019.

Should Defendant elect to proceed to the merits of the case, the Court will set a briefing schedule.

This order terminates Dkt. Nos. 17, 20, 23, 26.

**IT IS SO ORDERED.**

Dated: 7/7/2023

*/s/ Haywood S. Gilliam, Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge